## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

First Integrity Bank, N.A.,

        Plaintiff,

v.

The Ohio Casualty Insurance Company,

        Defendant.

**Memorandum of Law and Order**

Civil File No.05-2761 (MJD/RLE)

_____

Andrew T. Jackola, Shawn Pearson, and Steven H. Silton, Mansfield Tanick & Cohen, PA, Counsel for Plaintiff.

Amanda M. Cialkowski and Brian N. Johnson, Halleland Lewis Nilan & Johnson, PA, and Cole S. Kain and Randall I. Marmor, Clausen Miller, PC, Counsel for Defendant.

_____

## I.    INTRODUCTION

This case is before the Court on Defendant's Motion to Dismiss the Complaint For Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 4.] The Court heard oral arguments on March 17, 2006.

## II.    PROCEDURAL HISTORY

First Integrity filed this lawsuit against Ohio Casualty on December 1, 2005. It alleges that Defendant is liable under theories of breach of contract, unjust

enrichment, misrepresentation, consumer fraud in violation of Minn. Stat. §

325F.69, and deceptive trade practices in violation of Minn. Stat. § 325D.44.  Ohio

Casualty filed the present motion to dismiss on January 6, 2006.

## III.    FACTUAL BACKGROUND

Since this case is before the Court on Defendant's motion to dismiss, the

Court takes Plaintiff's facts as true, and draws all reasonable inferences from the

Complaint most favorably to Plaintiff.  <u>Westcott v. City of Omaha</u>, 901 F.2d 1486,

1488 (8th Cir. 1990).

This case involves insurance coverage for bank fraud under a financial

institution bond.  Plaintiff, First Integrity, purchased a financial institution bond

from Defendant Ohio Casualty for the term September 28, 2004 to September 28,

2005 ("bond").  Plaintiff asserts claims under two provisions of the bond.

### A.    Facts Underlying the Insurance Claim

Little Pine Dairy, LLP ("Little Pine") maintained a checking account with

First Integrity.  On November 16, 2004, Little Pine issued a check payable to

Patrick Ruddy in the amount of $91,432.00.  Little Pine subsequently requested

that payment on that check be stopped.  First Integrity complied with Little Pine's

request and payment on the check was not made.  Less than two weeks later, on

November 30, 2004, a man purporting to be David Van Heel, a partner at Little

Pine, phoned First Integrity to request a wire transfer in the amount of

$88,132.00, payable to Ruddy.  The caller provided Little Pine's wire transfer

authorization code as verification at the time of the request.  The payment was

processed and made that day.

During an independent audit of Little Pine, it was discovered that the wire

transfer payment had not been authorized by Little Pine.  Little Pine suspected

that a former financial consultant, Theodore Devine, had authorized the

fraudulent payment by pretending to be Van Heel.  Ruddy, the recipient of the

payment is Devine's half brother.[1]  First Integrity indemnified Little Pine for the

loss relating to the wire transfer.

First Integrity initiated a claim under the bond resulting from the

fraudulent transfer of funds out of Little Pine's account.  Ohio Casualty denied the

claim by letter dated August 19, 2005 and the current suit resulted.


### III.   ARGUMENTS OF THE PARTIES

#### A.   <u>Motion to Dismiss</u>

As noted earlier, the Court must construe the allegations in the pleadings in

a light most favorable to the nonmovant, including taking the facts alleged in the

Complaint as true.  <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir.

---

[1] Theodore Patrick Devine pleaded guilty to bank fraud in United States District Court on January 17, 2006 for related conduct.

1990).  The Complaint should be liberally construed in Plaintiff's favor and should

not be dismissed under Rule 12(b)(6) unless it appears that Plaintiff can prove "no

set of facts that would entitle him to relief."  Id.  Under this standard, dismissal is

granted "only in the unusual case in which a plaintiff includes allegations that

show on the face of the complaint that there is some insuperable bar to relief."

Gebhardt v. ConAgra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (quotation

omitted).

Generally, a court may not consider matters outside the pleadings on a Rule

12(b)(6) motion to dismiss.  Fed. R. Civ. P. 12(b)(6).  However, documents

necessarily embraced by the complaint are not matters outside the pleadings.

Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1068-69 (8th Cir.

2004) (citation omitted).

In this case, the Complaint is based on contractual obligations involving an

insurance bond.  The exact language of the bond and the correspondence related to the

insurance claim are integral to First Integrity's allegations of breach of contract and

misrepresentation.  Accordingly, the bond and correspondence involved in the

processing of the related insurance claim are embraced by the Complaint and

considered in this motion.

### B.    Counts Based on the Errors and Omissions Policy

First Integrity alleges that it had a contract with Ohio Casualty covering

4

CASE 0:05-cv-02761-MJD-RLE   Document 17   Filed 05/15/06   Page 5 of 17


"professional errors and omissions" for which it paid monthly premiums throughout the insurance term and that Ohio Casualty's failure to indemnify it for the fraudulent transfer constitutes a breach of contract under Minnesota law. (Compl. ¶¶ 5, 18, 20.)

First Integrity appears to have abandoned these counts as First Integrity's Memorandum in Opposition to Defendant's Motion to Dismiss does not mention the errors and omissions contract, nor any third party claim that would entitle it to this coverage.  Even if First Integrity intends to pursue these claims, dismissal is appropriate as First Integrity has alleged "no set of facts that would entitle [it] to relief."  The Complaint does not identify any relevant coverage provisions under the errors and omissions policy.  Moreover, all contractual provisions referenced by the Complaint are contained in the bond, not the errors and omissions contract.

Further, the Proof Of Loss seeks payment "under Blanket Bond" rather than under the errors and omissions policy.  (O'Brien Aff. Ex. 3.)  Accordingly, First Integrity has failed to state a claim under the errors and omissions policy and Counts One, Three, Five, Seven, and Nine are dismissed.

### C.    Count Two-Breach of Contract

First Integrity argues that Ohio Casualty is responsible to indemnify it for its losses based upon two provisions of the bond.  The first is a provision relating to

coverage for alteration and forgery.  The second is a provision relating to coverage

for situations wherein the bank fails to honor a stop payment request.  Ohio

Casualty insists that this case should be dismissed because First Integrity failed to

plead that it had suffered any loss and the language of the two provisions of the

bond do not require indemnification in this case.

### 1.   <u>Whether Losses Have Been Alleged</u>

The Complaint states, "Plaintiff has been harmed by Defendant's breach of

contract in an amount in excess of $75,000."  (Compl. ¶ 29.)  Ohio Casualty asserts

that according to the Complaint, it was Little Pine, not First Integrity who suffered

the loss of $88,132.00, thus no loss has been alleged by First Integrity.

The Court finds that First Integrity pleaded losses with sufficient

particularity to survive a motion to dismiss.  Minnesota is a notice-pleading state

and a pleading need not allege every element of a cause of action, but must give

"fair notice of the nature and basis or grounds for a claim, and a general

indication of the type of litigation involved."  <u>Hopkins v. Saunders</u>, 199 F.3d 968,

973 (8th Cir. 1999) (citation omitted).  Although the Complaint may not explicitly

state that First Integrity reimbursed Little Pine for its losses, it is clear that this is

the basis for the present suit.  Exhibits submitted by Ohio Casualty make it

abundantly clear that First Integrity reimbursed Little Pine.  It its initial letter to

Ohio Casualty, First Integrity stated, "Therefore, we request that Ohio Casualty

indemnify First Integrity Bank for this act of fraud which has cost the Bank $88,132." (O'Brien Aff. Ex. 2, at 2.)

Ohio Casualty further alleges that First Integrity may not have been responsible for the loss since Little Pine gave the perpetrator access to its wire transfer authorization code. This allegation is a fact-based allegation not suitable for a motion to dismiss. Accordingly, the Court finds First Integrity has adequately alleged damages and that Ohio Casualty has been given sufficient notice of the incident giving rise to the suit to satisfy the notice pleading requirements. Accordingly, Ohio Casualty's Motion to Dismiss Count Two for failure to allege losses is denied.

## 2. <u>Insuring Agreement D</u>

Insuring Agreement D of the bond provides coverage for loss resulting from a forged or altered document. In that provision, Ohio Casualty agreed to indemnify First Integrity for:

(D)   Loss resulting directly from
(1)   Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit,

(2)   transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or

7

endorsed by any customer or the Insured or by any
banking institution but which instructions or advices
either bear a signature which is a Forgery or have been
altered without the knowledge and consent of such
customer or banking institution.  Telegraphic, cable or
teletype instructions or advices, as aforesaid, exclusive or
transmissions of electronic funds transfer systems, sent
by a person other than the said customer or banking
institution purporting to send such instructions or
advices shall be deemed to bear a signature which is a
Forgery.

(O'Brien Aff. Ex. 1, at 2.)

The parties agree that the wire transfer, standing alone would not be

covered under Insuring Agreement D.  Therefore the dispute centers around

whether the Court should view the original check and the wire transfer as one

continuous fraud or whether each constitutes a separate event.  In the first

instance Ohio Casualty may be responsible to indemnify First Integrity since the

telephoned wire instructions arguably "altered the Check to reinstate payment to

Patrick Ruddy."  (First Integrity Memo. in Opp. to Summ. J., at 7.)  Under the

latter view of the facts, however, First Integrity's loss would not be covered as no

written instrument would be present.

At the motion to dismiss stage of litigation the Court is required to take First

Integrity's version of the facts as true.  First Integrity argues that the two events

were related as they involved the same individuals (Devine, Ruddy, Little Pine,

and First Integrity); the amounts of the checks were relatively close; and the

8

check and the wire transfer were within two weeks of one another.  Therefore, it is possible to conclude that the check and the wire transfer were part of the same fraudulent conduct and Ohio Casualty may be responsible to indemnify First Integrity under Insuring Agreement D.  Accordingly, the Court has determined that the wire transfer and the check may be construed as one act for the purposes of this motion and Ohio Casualty's Motion to Dismiss Count Two on this basis is denied.

### a.   Causal Connection

Presuming the events are related, the Court must next determine whether the language of Insuring Agreement D provides coverage for the fraudulent transaction.  Ohio Casualty argues that First Integrity is still not entitled to coverage under Insuring Agreement D because the losses did not "result directly from" either a negotiable instrument or written instructions or devices as required by the bond.  (Id.)

The Court finds that since First Integrity is a small bank, it is plausible that its employees would have had knowledge of the recent stopped check and have authorized the wire transfer in part based on this knowledge, giving rise to a causal connection.

While it is true that the Complaint does not aver that the check was actually cashed, it does allege that the wire transfer was based "on the faith of" the check.

Whether or not the wire transfer was effectuated in part on the faith of the check requires a subjective, factual analysis which is inappropriate for a motion to dismiss.  Taking all of First Integrity's stated facts as true, Insuring Agreement D is ambiguous as to whether indemnification is required in this case and Ohio Casualty's Motion to Dismiss Count Two based on this premise is denied.

### b.     <u>Forgery/Alteration</u>

Ohio Casualty argues that Insuring Agreement D is inapplicable even considering the check because no forgery or alteration occurred.  The Court does not agree.

The term "forgery" is defined in the bond as "the signing of a name of another person or organization with intent to deceive . . ."  (O'Brien Aff. Ex. 1, at 4.)  The facts are clear that no forgery occurred since the original check was executed by a Little Pine employee with authority to conduct financial transactions.  However, the bond does not define the terms "alter" and "alteration."  The term "alter" in its common usage means "to make different in some particular, as size, style, course, or the like; modify."  <u>The Random House College Dictionary</u>, 39 (Jess Stein, Revised ed. 1982).  Assuming that the wire transfer and the check were related, it is possible that the check could have been "altered" by a telephonic wire transfer request.  Accordingly, the contract is ambiguous as to whether Ohio Casualty may be required to indemnify First

Integrity for Devine's fraudulent wire transfer request.  Accepting all of First

Integrity's allegations as true, the contract is ambiguous and the terms must be

construed by a jury.  Turner v. Phi Sorority House, 276 N.W.2d 63, 66 (Minn.

1979) (holding that the construction and effect of a contract is a question of law

unless the contract is ambiguous).  Accordingly, Ohio Casualty's Motion to Dismiss

Count Two as to coverage under Insuring Agreement D is denied.

### 2.    Supplemental Insuring Agreement Number 7

Supplemental Insuring Agreement Number 7, entitled "Stop-Payment

liability," provides coverage for situations when First Integrity incurs a loss as a

result of its liability for having complied with or failed to comply with a customer's

notice to stop payment on a check.  (O'Brien Aff. Ex. 1, at 11.)  Under that

provision, Ohio Casualty agreed to indemnify First Integrity for:

> Any and all sums the Insured becomes obligated to pay by reason of
> its legal liability for damages:
>
> (1)    for having complied with, or failed to comply with, any
> written notice by any depositor of the Insured, or the
> depositor's authorized representative, received by the
> Insured on or after the effective date of this
> Supplemental Insuring Agreement to stop payment on
> any check or draft made or drawn by such depositor or
> the depositor's authorized representative, or
>
> (2)    for having, on or after the effective date of this
> Supplemental Insuring Agreement, improperly refused
> to pay any check or draft made or drawn by any
> depositor of the Insured or the depositor's authorized
> representative.

(Id.)

Ohio Casualty does not dispute that it would be liable under this provision if First Integrity had failed to comply with Little Pine's stop payment request. However, in this case, Ohio Casualty maintains that the stop payment was correctly implemented and no stop-payment liability has arisen.

As articulated above, the check and the wire transfer may be viewed as part of the same fraudulent transfer. Thus, Ohio Casualty may have improperly disregarded the stop-payment request when it honored the wire transfer two weeks later, making it liable for related losses.

At this stage of litigation the Court must take First Integrity's stated facts as true. Based on a view that the wire transfer was in part a reinstatement of the stopped check, it appears that there is no insuperable bar to relief and Ohio Casualty's Motion to Dismiss Count Two as to Supplemental Insuring Agreement Number 7 is denied.

### D.   **Count Four-Unjust Enrichment**

First Integrity seeks recovery on a theory of unjust enrichment. Ohio Casualty argues that unjust enrichment is inapplicable in this case because a binding contract governs the claims at issue.

As First Integrity does not challenge Ohio Casualty's arguments, it appears this claim has been abandoned. However, even if First Integrity intended to

12

pursue a claim of unjust enrichment, Ohio Casualty has failed to state a claim

upon which relief can be granted because unjust enrichment is an equitable

remedy and may only be asserted when there is no adequate remedy at law.

United States Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497

(Minn. 1981) (when the rights of the parties are governed by a valid contract, a

claim for unjust enrichment must fail); Southtown Plumbing, Inc. v. Har-Ned

Lumber Co., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  In this case, the parties

agree that a valid and enforceable contract governs the dispute.  Thus, an

equitable claim for unjust enrichment cannot lie and Ohio Casualty's Motion to

Dismiss Count Four is granted.

### E.   Count Six-Misrepresentation

Ohio Casualty argues that First Integrity's claims based on alleged

misrepresentation must be dismissed because they were not stated with

particularity and because the allegations relate to the same conduct alleged to

constitute a breach of contract.

First Integrity does not challenge Ohio Casualty's arguments relating to

misrepresentation and appears to have abandoned them.  Regardless of whether

the claims have been abandoned, the Court grants Ohio Casualty's Motion to

Dismiss Count Six.

Minnesota law does not recognize an independent tort for conduct that

merely constitutes a breach of contract.  <u>UFE, Inc. v. Methode Elecs., Inc.</u>, 808 F.

Supp. 1407, 1410 (D. Minn. 1992) (citing <u>Wild v. Rarig</u>, 234 N.W.2d 775, 790

(Minn. 1975) (holding that in an action for breach of contract, plaintiff is limited

to damages flowing from such breach except where defendant's breach constitutes

an independent tort)).  In this case, the actions at the heart of the

misrepresentation claim are identical to those which constitute a breach of

contract and cannot state a claim for a separate misrepresentation cause of action.

Additionally, claims predicated on misrepresentation must satisfy Rule 9(b)

requiring that they be stated with particularity.  Misrepresentation, whether

negligent or fraudulent, constitutes fraud under Minnesota law.  <u>Juster Steel v.</u>

<u>Carlson Companies</u>, 366 N.W.2d 616, 618 (Minn. 1985).  Federal Rule of Civil

Procedure 9(b) provides that "[i]n all averments of fraud or mistake the

circumstances constituting fraud or mistake shall be stated with particularity."  A

fraud claim must identify the "who, what, where, when, and how."  <u>Parnes v.</u>

<u>Gateway, 2000, Inc.</u>, 122 F.3d 539, 550 (8th Cir. 1997).

First Integrity alleges that "at the time Defendant entered into the

Supplemental Bond, Defendant intended not to indemnify Plaintiff for losses

suffered under the terms of the Supplemental Bond." (Compl. ¶ 57.)  The

Complaint does not specify who within Ohio Casualty made the

misrepresentations, what statements constituted a misrepresentation, or when

14

these misrepresentations were made.  Accordingly, Ohio Casualty's Motion to

Dismiss Count Six is granted.

### F.   Count Eight-Consumer Fraud

The Consumer Fraud Act provides in relevant part:

> The act, use, or employment by any person of any fraud, false
> pretense, false promise, misrepresentation, misleading statement or
> deceptive practice, with the intent that others rely thereon in
> connection with the sale of any merchandise, whether or not any
> person has in fact been misled, deceived, or damaged thereby, is
> enjoinable as provided therein.

Minn. Stat. § 325F.69, subd. 1.

Ohio Casualty maintains that First Integrity's Complaint does not set out

with particularity the purported fraudulent acts, as required by Federal Rule of

Civil Procedure 9(b).

The Court finds that even construing the Complaint as liberally as possible,

it has not stated sufficient allegations of fraud.  The Complaint does not clearly

articulate the who, what, when, where, and how regarding the manner in which

the sale of this standard insurance product constitutes fraud under the Consumer

Fraud Act.  Accordingly, the Court could grants Ohio Casualty's Motion to Dismiss

Count Eight.

### G.   Count Ten-Deceptive Trade Practices

The Minnesota Deceptive Trade Practices Act ("DTPA") prohibits any

person from creating a likelihood of confusion or misunderstanding as to the

15

source, affiliation, graphic origin, characteristics, or condition of goods or services.

Minn. Stat. § 325D.44, subd. 1; Krueger v. State Farm Fire & Cas. Co., 510 N.W.2d

204, 211 (Minn. Ct. App. 1993).

The Complaint states, "Defendant violated the DTPA by the above described

conduct in connection with the sale of insurance products, including but not

limited to the Contract by misrepresenting that the Contract had uses and benefits

it did not have." (Compl. ¶ 70.) First Integrity argues that by interpreting the

contract [bond] in a constricted fashion, Ohio Casualty has deprived First

Integrity of the services it had contracted for-namely that the terms of the bond

would be interpreted fairly and evenly.

The Court finds that dismissal is improper as it is not clear that First

Integrity's claim is not cognizable under any circumstances. See Frey v. City of

Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). After an opportunity for

discovery it is possible that facts regarding specific assurances over coverage may

come to light which would support an action under the Deceptive Trade Practices

Act. Accordingly, Ohio Casualty's Motion to Dismiss Count Ten is denied.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.    Defendant Ohio Casualty Insurance Company's Motion to Dismiss
      [Docket No. 4] is **GRANTED IN PART** and **DENIED IN PART** as
      follows:

16

     a.      Counts One, Three, Four, Five, Six, Seven, Eight, and Nine are dismissed with prejudice;

     b.      Counts Two and Ten remain.


Dated: May 15, 2006                  s / Michael J. Davis         
                                             Judge Michael J. Davis
                                             United States District Court